IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| CORE PRODUCTS, INC.; formerly known as ZINKIN AVIATION, INC., | ) ) ) | No. CV-F-05-1118 REC DLB |
| | ) | ORDER DENYING DEFENDANT |
| Plaintiff, | ) ) | AVIATION SERVICES UNLIMITED AND DEFENDANT WAYNE |
| | ) | O'BERG'S MOTION TO DISMISS |
| vs. | ) ) | FOR LACK OF PERSONAL JURISDICTION. |
| DOVE AIR, INC., a corporation, AVIATION | ) ) | |
| SERVICES, INC., a corporation, JOSEPH DUNCAN, | ) ) | (Doc. 12) |
| an individual, WAYNE O'BERG, an individual, | ) ) | |
| | ) | |
| Defendants. | ) ) | |
| _____ | ) | |

On November 21, 2005, the Court heard the Motion to Dismiss

for Lack of Personal Jurisdiction ("the Motion") filed by

Defendants Aviation Services Unlimited, Inc. ("ASU"), sued as

Aviation Services, Inc., and Wayne O'Berg (collectively

"Defendants").[1]  Upon due consideration of the written and oral

_____

[1]The other defendants in this action, Dove Air, Inc., and
Joseph Duncan, have not joined in the Motion.  See Motion at 1 n.
1.

1

arguments of the parties and the record herein, the Court DENIES the Motion as set forth herein.

**I.   Background**

Plaintiff Core Products ("Plaintiff"), headquartered in California, purchased a Sabreliner 60 Aircraft, Model Number NA-265-60 Serial Number 306-142, registered as N143DZ (the "Aircraft") from Dove Air, Inc., ("Dove Air") in the summer of 2003.  Dove Air is a North Carolina corporation.  Zinkin Decl. Ex. A at 12.  After the sale, ASU performed maintenance on the Aircraft at its Oklahoma facilities at the request of Dove Air. On August 26, 2003, Mr. O'Berg, owner and president of ASU, signed an "Aircraft Log Book Entry" that detailed several maintenance tasks ASU had performed.  See Zinkin Decl. Ex. B at 33-36.  On September 3, 2003, Mr. O'Berg signed a Work Order indicating that ASU had repaired and inspected the Aircraft in accordance with "The Maintenance Rules of the Federal Aviation Regulation under which the operator is cerificated."  Id. at 37.

After the repairs, Plaintiff received the Aircraft in California.  Some time after delivery, Plaintiff determined that Defendants had not performed the work that the Log Book and Work Order detailed.  Plaintiff then initiated numerous communications in writing and by telephone with Dove Air and Defendants regarding the repairs.  Plaintiff alleges that these communications resulted in an oral agreement by Dove Air and Joseph Duncan to compensate Defendants for maintenance necessary to correct repairs performed improperly in 2003.  Defendants also

entered an oral agreement with Plaintiff to perform certain
cosmetic repairs on the Aircraft.  Plaintiff claims that
Defendants "expressly agreed" to return the Aircraft after
Plaintiff paid for the cosmetic repairs only.  Compl. at 19.

In the summer of 2005, the Aircraft returned to Oklahoma for
additional repairs.  ASU performed two sets of repairs on the
Aircraft that generated two invoices.  The invoice for the
cosmetic repairs totaled $6,284.95.  Zinkin Decl. Ex. C at 52.
The other invoice totaled $88,814.90.  Id. at 57.  Plaintiff paid
for the cosmetic repairs but not for the others.  On September 9,
2005, ASU sent Plaintiff a Notice of Intent to Sell Personal
Property.  Buchanan Decl. Ex. A.  This document indicated that
ASU planned to sell the Aircraft to pay the outstanding balance
from the repairs.

ASU is an Oklahoma corporation.  Its headquarters are in
Oklahoma.  It does not have a physical presence in California in
the form of incorporation, property ownership, offices, agents,
or bank accounts.  It has not used California media to advertise
or used direct-mail marketing here, though ASU's contact
information is available on two Internet listings.  It has
serviced some aircraft based in California, but these repairs
were performed in Oklahoma.  ASU occasionally buys parts from a
California supplier.  Mr. O'Berg visited California to attend a
one-day seminar in 1997.

On September 1, 2005, Plaintiff filed suit in this Court
seeking rescission and restitution, and alleging

3

fraud/intentional misrepresentation, negligent misrepresentation, breach of contract, breach of warranty, and conversion.

On September 15, 2005, Plaintiff filed a petition in Oklahoma state court seeking a declaratory judgment that Defendants lien on the Aircraft is improper and asking the court to order ASU not to sell the Aircraft and to return it to Plaintiff.

On October 11, 2005, Defendants filed this Motion. Plaintiff filed its opposition on November 7, 2005, claiming that Defendants are subject to general and specific jurisdiction in California.  In its opposition, Plaintiff also requested that the Court continue the hearing on the Motion to allow it to complete jurisdictional discovery.  On November 14, Defendants filed their reply.  Defendants attached to the reply partial responses to Plaintiff's jurisdictional discovery requests and indicated that they were still searching for certain requested documents.  The reply stated that the partial responses were being contemporaneously served on Plaintiff.  Plaintiff did not contend at oral argument that it had been prejudiced by the incomplete jurisdictional discovery.

Following oral argument, the Court by its order of November 22, 2005, directed the parties to submit additional briefing and declarations regarding whether Defendants purposefully directed tortious acts toward California.  On December 2, 2005, Plaintiff filed a supplemental brief and declaration opposing the Motion. On December 19, 2005, Defendants filed a supplemental brief and

declaration in support of the Motion.

**II.  Discussion**

    **A.    Legal Standard**

Plaintiff has the burden to establish a court's personal jurisdiction over a defendant. <u>Doe v. Unocal Corp.</u>, 248 F.3d 915, 922 (9th Cir. 2001).  Where the district court rules on the motion to dismiss without holding an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion. <u>Id.</u>  This requires plaintiff to demonstrate facts that, if true, would support jurisdiction over defendant. <u>Id.</u>  "Although the plaintiff cannot 'simply rest on the bare allegations of its complaint,' uncontroverted allegations in the complaint must be taken as true." <u>Schwarzenegger v. Fred Martin Motor Co.</u>, 374 F.3d 797, 800 (9th Cir. 2004) (internal citations omitted).  Conflicts between facts contained in the parties' affidavits are resolved in Plaintiff's favor. <u>AT&T v. Compagnie Bruxelles Lambert</u>, 94 F.3d 586, 588 (9th Cir. 1996).  "If the Court denies a Rule 12(b)(2) motion because a prima facie case has been shown, the movant can nevertheless put the opposing party to its proof by continuing to contest personal jurisdiction, either at a pretrial evidentiary hearing or at the trial itself." <u>ADO Fin., AG v. McDonnell Douglas Corp.</u>, 931 F. Supp. 711, 717 (C.D. Cal. 1996) (citing <u>Metro. Life Ins. Co. v. Neaves</u>, 912 F.2d 1062, 1064, n. 1 (9th Cir. 1990)).  Where facts bearing on jurisdiction are "intertwined with the merits of the action" determination of

jurisdiction at trial is preferable.  Id. at 714 (citing Data Disc, Inc. v. Sys. Tech. Assocs., 557 F.2d 1280, 1285-86 n. 2 (9th Cir. 1977)).

In ruling on a motion to dismiss for lack of personal jurisdiction in California, a court must consider:  (1) whether a state statute potentially confers personal jurisdiction over the nonresident defendant, and (2) whether the exercise of jurisdiction accords with federal constitutional principles of due process.  Congoleum Corp. v. DLW Aktiengesellschaft, 729 F.2d 1240 (9th Cir. 1984) (citing Data Disc, 557 F.2d at 1285-86). California's long-arm statute, California Civil Procedure Code section 410.10, authorizes state and federal courts to exercise personal jurisdiction to the full extent permitted by the Constitution.  Congoleum Corp., 729 F.2d at 1241.

Due process limitations on state power require that the defendant have certain "minimum contacts" with the forum such that haling it into court there "does not offend 'traditional notions of fair play and substantial justice.'"  World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 292, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945)).

**B.   General Jurisdiction**

General jurisdiction requires both that the defendant has the requisite contacts with the forum state and that the assertion of jurisdiction is reasonable.  Amoco Egypt Oil Co. v. Leonis Navigation Co., 1 F.3d 848, 851 (9th Cir. 1993) (citing

1  Asahi Metal Indus. Co. v. Super. Ct., 480 U.S. 102, 107 S. Ct.

2  1026, 94 L. Ed. 2d 92 (1987)).  Where defendant's contacts with

3  the forum are sufficient to establish general jurisdiction,

4  personal jurisdiction lies even for causes of action unrelated to

5  the defendant's activities in the forum.  Data Disc, 557 F.2d at

6  1287 (quoting Perkins v. Benguet Consol. Mining Co., 342 U.S.

7  437, 446-47, 72 S. Ct. 413, 96 L. Ed. 485 (1952)).

8      General jurisdiction is only appropriate where the

9  nonresident defendant's activities in the forum state are

10  "'substantial' or 'continuous and systematic.'"  Bancroft &

11  Masters, Inc. v. Augusta Nat'l, Inc., 223 F.3d 1082, 1086 (9th

12  Cir. 2000).  The Ninth Circuit "regularly [has] declined to find

13  general jurisdiction even where the contacts were quite

14  extensive."  Amoco Egypt, 1 F.3d at 851 n. 3.  The nonresident

15  defendant's contacts must be so thorough that they "approximate

16  physical presence" in the forum.  Bancroft & Masters, 223 F.3d at

17  1086.

18      Plaintiff argues that general jurisdiction is appropriate in

19  this case because Defendants have business-related contacts with

20  California, such as sales of its services to California residents

21  and promotional activities directed at the California market.

22  Plaintiff points out that ASU's contact information is listed in

23  two Internet directories.  See Zinkin Decl. Ex. D at 59, Ex. F at

24  67.  Advertising in the forum is not sufficient to subject a

25  defendant to general jurisdiction there.  Cubbage v. Merchent,

26  744 F.2d 665, 668-69 (9th Cir. 1984) (holding that yellow page

advertisement published in the forum did not establish general personal jurisdiction absent more substantial contacts, such as residence, licensing, or incorporation in the forum); Bancroft & Masters, 223 F.3d at 1086 (holding insufficient "passive" Web site coupled with occasional sales to forum customers).  The general jurisdiction inquiry focuses on the degree to which Defendants have "purposefully availed" themselves of the privilege of conducting business in the forum.  World-Wide Volkswagen, 444 U.S. at 297.

The facts here are weaker than those in cases that the Ninth Circuit has found insufficient to establish general jurisdiction. Defendants contend that they did not request that their information be included in the online listings.  O'Berg Supp. Decl. at ¶¶ 7, 13.  Plaintiff does not present facts to the contrary.  The mere appearance of ASU's contact information on an online listing accessible in the forum does not establish purposeful availment.  In Cubbage and Bancroft & Masters, the defendants were not subject to general jurisdiction even though they undertook intentional acts to advertise in the forum: taking out a yellow page ad and creating and hosting a Web site. Cubbage, 744 F.2d at 668-69; Bancroft & Masters, 223 F.3d at 1086.

Plaintiff also argues that the "nature of the business of aircraft servicing, and the mobility of aircraft" make Defendants' venture an interstate business that participates in transactions involving California residents.  Opp'n at 5.

8

1  Plaintiff's argument that the mobility of aircraft militates in
2  favor of general jurisdiction is misguided.  The Supreme Court in
3  World-Wide Volkswagen has already rejected such a mobile-chattels
4  based argument.  444 U.S. at 295-97.  The plaintiffs in that case
5  argued that defendant, a regional distributor of automobiles in
6  New York, was subject to personal jurisdiction in Oklahoma
7  because it could foresee that automobiles it sold would cause
8  injury in that forum.  Id. at 295.  The Court rejected that
9  theory, focusing instead on defendant's conduct and connection
10 with the forum state to determine whether it could reasonably
11 anticipate being sued there.  Id. at 297.

12     That aircraft tend to move from state to state does not
13 render Defendants' operation "an interstate business" subject to
14 jurisdiction wherever the aircraft it services fly.  If this
15 theory of jurisdiction were the law, every seller of mobile
16 chattels would "in effect appoint the chattel his agent for
17 service of process."  Id. at 296.  The focus must instead be on
18 Defendants' conduct and connections to the forum.  Defendants
19 know that aircrafts they service occasionally travel to
20 California.  This fact does not indicate that Defendants have
21 purposefully availed themselves of the privilege of doing
22 business in California.

23     Though Defendants' discovery responses are as yet
24 incomplete, other potential contacts with California do not seem
25 sufficient to establish general jurisdiction.  One of Defendants'
26 discovery responses indicates that they purchase parts from D.K.

9

Turbines, which is apparently located in California.  Buchanan

Supp. Decl. Ex. B at 4.  Mr. O'Berg also attended a seminar in

San Diego around 1997.  Even substantial purchases of goods in

the forum do not support personal jurisdiction for causes of

action unrelated to those purchases.  Helicopteros Nacionales de

Colombia v. Hall, 466 U.S. 408, 411, 416, 104 S. Ct. 1868, 80 L.

Ed. 2d 404 (1984) (holding insufficient defendant's $4 million in

purchases in the forum over several years, including helicopters

amounting to approximately 80 percent of defendant's fleet, spare

parts, and accessories).  In Helicopteros Nacionales, training of

multiple employees in the forum did not establish general

jurisdiction.  466 U.S. at 411 (holding general jurisdiction

improper where defendant sent pilots to forum for training and

sent management and maintenance personnel to forum for technical

consulting).  Thus, even significant purchases of parts or

training in the forum are insufficient to establish general

jurisdiction.

　　　　Defendants have also serviced in Oklahoma two aircraft based

in California.  Id. at 3.  That ASU only performs repairs in

Oklahoma "should not be disregarded lightly."  See Dalton v. R &

W Marine, Inc., 897 F.2d 1359, 1362 (5th Cir. 1990) (holding that

general jurisdiction did not lie even though 12.9 percent of

defendant's revenues were from sales to the forum because

defendant "exercise[d] its due process rights" by ensuring that

the contracts were entered and payment remitted outside of the

forum only); Gates Learjet Corp. v. Jensen, 743 F.2d 1325,

1   1330-31 (9th Cir. 1984) (no jurisdiction over defendants despite

2   several visits to and purchases in forum, solicitation of

3   contract in forum which included choice-of-law provision favoring

4   forum, and extensive communication with forum).  Sales to forum

5   residents coupled with marketing activities there do not

6   necessarily establish general jurisdiction over a defendant who

7   provides a service outside of the forum.  <u>Shute v. Carnival</u>

8   <u>Cruise Lines</u>, 897 F.2d 377, 381 (9th Cir. 1990), <u>rev'd on other</u>

9   <u>grounds</u>, 499 U.S. 585, 111 S. Ct. 1522, 113 L. Ed. 2d 622 (1991)

10  (no general jurisdiction where 1 percent of defendant's sales of

11  cruises were in forum and defendant used local media, direct-mail

12  advertising, and promotional seminars there).

13      Defendants' contacts with California appear to be quite

14  meager.  Defendants are not California residents, are not

15  licensed to do business in California, are not incorporated in

16  California, and have not perform any services here.  <u>See</u> <u>Cubbage</u>,

17  744 F.2d at 667-68.  The Court finds that Defendants'

18  miscellaneous and unintentional connections with California are

19  far from sufficient to constitute a prima facie case for general

20  jurisdiction.

21      **C.   Specific Jurisdiction**

22      A defendant is subject to specific jurisdiction only when

23  each of three elements exist:  (1) the "nonresident defendant

24  must have purposefully availed himself of the privilege of

25  conducting activities in the forum by some affirmative act or

26  conduct, (2) plaintiff's claim must arise out of or result from

1  the defendant's forum-related activities; and (3) exercise of

2  jurisdiction must be reasonable."  <u>Roth v. Garcia Marquez</u>, 942

3  F.2d 617, 620-21 (9th Cir. 1991).

4        **1.    Purposeful Availment or Purposeful Direction**

5        Courts use the phrase "purposeful availment" as shorthand to

6  refer to both purposeful availment and purposeful direction.

7  <u>Schwarzenegger</u>, 374 F.3d at 802.  The purposeful availment prong

8  is satisfied where the nonresident defendant has "purposely

9  availed itself of the privilege of conducting activities within

10 the forum State, thus invoking the benefits and protections of

11 its laws" or has purposefully directed its activities toward the

12 forum.  <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 475, 105 S.

13 Ct. 2174, 85 L. Ed. 2d 528 (1985); <u>Dole Food Co. v. Watts</u>, 303

14 F.3d 1104, 1111 (9th Cir. 2002).  Courts generally use a

15 purposeful availment analysis for suits sounding in contract and

16 purposeful direction analysis for suits sounding in tort.

17 <u>Schwarzenegger</u>, 374 F.3d at 802.

18        **a.    Purposeful Availment**

19       The Court evaluates its jurisdiction over the contract

20 claims under a purposeful availment analysis.  Plaintiff claims

21 that specific jurisdiction is proper because Defendants have

22 purposefully availed themselves of the privilege of doing

23 business in California by entering a contract with a forum

24 resident.  The mere existence of a contract between a defendant

25 and a forum resident does not automatically establish sufficient

26 minimum contacts with the forum.  <u>Burger King</u>, 471 U.S. at 478.

To determine whether a contract can establish the minimum contacts necessary for personal jurisdiction, a court should consider "prior negotiations and contemplated future consequences, along with the parties' actual course of dealing." Id. at 479.

In Burger King, defendant, a Michigan resident, applied to become a franchisee with plaintiff fast-food chain, headquartered in Florida. Id. at 466. Defendant negotiated the terms of the deal with the district office in Michigan and with the Florida headquarters. Id. at 467. The final agreement obligated defendant to a series of payments exceeding $1 million. Id. Pursuant to the franchise agreement, defendant would receive the right to use plaintiff's trademarks, a lease of standardized restaurant facilities, a variety of proprietary information, and other franchise-related services. Id. at 464-65. This agreement placed defendant in a "carefully structured 20-year relationship that envisioned continuing and wide-reaching contacts" with plaintiff in the forum state. Id. at 480. The Court concluded that this contractual relationship established defendant's minimum contacts because it showed that defendant had "deliberately 'reach[ed] out beyond'" its home state to obtain the benefits of doing business with a forum resident. Id. at 479. The "quality and nature" of defendant's relationship to plaintiff indicated that his connections to the forum were not "'random,' 'fortuitous,' or 'attenuated.'" Id. at 480 (quoting Hanson v. Denkla, 357 U.S. 235, 253, 78 S. Ct. 1228, 2 L. Ed. 2d 1283

13

(1958)).  Merely providing a service outside of the forum that can harm a forum resident does not establish minimum contacts without a affirmative attempt to promote business within the forum.  See, e.g., Gray & Co. v. Firstenberg Mach. Co., 913 F.2d 758, 761 (9th Cir. 1990) (out-of-state broker of used food processing equipment); Sher v. Johnson, 911 F.2d 1357, 1363 (9th Cir. 1990) (out-of-state legal representation).

Plaintiff does not contend that the 2003 repairs were completed pursuant to a contract between Defendants and Plaintiff.  It appears that Dove Air arranged for this first round of repairs.  Plaintiff does contend that Defendants created "continuing obligations" to Plaintiff when it "warranted its work in 2003 by signing the aircraft certification statement."  Opp'n at 9.  Since Defendants knew the Aircraft would be transported to a customer in California, Plaintiff argues, it knowingly created an obligation to a forum resident.

Plaintiff and Defendants did not negotiate with each other prior to the point when Defendants first serviced the plane and it was delivered to Plaintiff.  It appears that prior to delivery, Defendants dealt exclusively with Dove Air.  Nor does it appear that Defendants by making a log-book entry that stated the craft was airworthy contemplated anything like a "carefully structured" or "continuing" relationship.  See Burger King, 471 U.S. at 480.  That Defendants were not part of the initial contract with Plaintiff but were merely performing a service for a third party counsels against a finding of minimum contacts.

14

1  Lafarge Corp. v. Altech Envtl. USA, 220 F. Supp 823, 829 (E.D.

2  Mich. 2002) (insufficient contacts where defendant supplied

3  component parts for the party who contracted with plaintiff to

4  install the completed monitoring system).  At best, Plaintiff was

5  a third-party beneficiary of a contract between Dove Air and

6  Defendants.  See Cleveland v. Dyn-A-Mite Pest Control, Inc., 57

7  P.3d 119, 126 (Okla. Civ. App. 2002) (holding obligor owed duty

8  to nonparty to a contract where contract was for benefit of the

9  nonparty that detrimentally relied on contract).  The

10 circumstances of the representations of airworthiness in 2003 do

11 not indicate that Defendants reached out to California to create

12 a contractual relationship with a forum resident.

13     Plaintiff also alleges that Defendants' conduct in

14 connection with the 2005 repairs demonstrates purposeful

15 availment on which the Court can base personal jurisdiction.

16 Plaintiff alleges that Defendants "conspired with Dove Air, Inc.

17 and Joseph Duncan to cause the aircraft to be transported to

18 Oklahoma in an effort to cover up the insufficient,

19 misrepresented repairs and maintenance of 2003." Opp'n at 9.

20 Furthermore, Defendants allegedly "induced" plaintiff to

21 transport the Aircraft to Oklahoma.  Id.  Defendants then entered

22 into "an express verbal agreement" with Plaintiff to perform

23 certain cosmetic services to the Aircraft.  Defendants

24 misrepresented the terms of servicing the Aircraft, according to

25 Plaintiff.

26     Focusing on Defendants' conduct toward the forum, the facts

15

before the Court do not show that Defendants reached out to the forum in connection with the 2005 repairs.  Apart from a conclusory allegation that Defendants conspired with Dove Air, Plaintiff does not allege that Defendants induced Dove Air to solicit Plaintiff's business or otherwise undertook to obtain Plaintiff's business.  Plaintiff did not send the plane to Oklahoma in response to Defendants actions such as advertising, solicitation, or any other affirmative conduct by Defendants. See Sher, 911 F.2d at 1362 ("There is no 'substantial connection' with California because neither the partnership nor any of its partners undertook any affirmative action to promote business within California."); Gray, 913 F.2d at 760 (single transaction with forum resident was inadequate where defendants had not ever "sought or done business in" the forum).  Plaintiff does not present facts that support an alternative to Defendants' inference that Dove Air and Plaintiff, without input or urging from Defendants, decided in the course of their negotiations to return the plane to Defendants for service.  Incidental communications that Defendants initiated with Plaintiff in the forum after Plaintiff solicited their services do not support personal jurisdiction.  Sher, 911 F.2d at 1362 (defendant's phone calls and letters to and acceptance of payment from forum were "normal incidents" of the business relationship that do not evince "the deliberate creation of a 'substantial connection'" with the forum in the absence of "affirmative action to promote business in the forum").

16

1    Plaintiff contends that after it requested Defendants make
2  additional repairs, Defendant agreed to return the Aircraft after
3  Plaintiff paid for the cosmetic repairs, regardless of whether a
4  balance remained.  Since Plaintiff had already contacted
5  Defendants to perform this second round of repairs, this alleged
6  agreement does not amount to an affirmative attempt to solicit
7  business in the forum.  Rather this agreement was merely part of
8  negotiations pertaining to a contract to be performed in
9  Oklahoma.

10    As mentioned above, the marketing efforts that Plaintiff
11  points out — the online listings — do not evince purposeful
12  availment.  Plaintiff does not allege facts contrary to
13  Defendants' averment that they did not cause the listings to be
14  made available.

15    Under the purposeful availment analysis, Defendants did not
16  reach out to the forum to create minimum contacts sufficient to
17  support personal jurisdiction.

18                    **b.    Purposeful Direction**

19    Plaintiff's complaint alleges that Defendants committed the
20  torts of intentional misrepresentation and conversion.  Courts
21  analyze the purposeful direction of intentional torts under the
22  "effects" test.  <u>Calder v. Jones</u>, 465 U.S. 783, 104 S. Ct. 1482,
23  79 L. Ed. 2d 804 (1984).  The effects test dictates that the
24  purposeful availment requirement is met where defendant has "(1)
25  committed an intentional act, (2) expressly aimed at the forum
26  state, (3) causing harm that the defendant knows is likely to be

                                   17

suffered in the forum state." <u>Dole</u>, 303 F.3d at 1111.

### i.   Intentional Misrepresentation

### (a)   Intentional Act

Plaintiff alleges Defendants directed acts toward the forum that amount to intentional misrepresentation and satisfy the first requirement.  In 2003, Defendants provided to Plaintiff maintenance books, records, and other documents that indicated that the Aircraft "was in a fully operational airworthy condition."  Compl. at 14.  Defendants did so, Plaintiff claims, with the intent to induce Plaintiff to conclude the sale of the Aircraft.  <u>Id.</u>  Plaintiff included with its supplemental briefing a declaration of Tim Hawkins, who piloted the Aircraft for Plaintiff.  Mr. Hawkins points, in his declaration, to certain problems with the Aircraft after delivery: "an incorrect brake assembly, fuel tank leakage, autopilot disengagement in flight, and worn engine igniters, among others."  Hawkins Decl. at ¶ 5. Mr. Hawkins also states,

> Mr. O'Berg told me in that phone conversation that he was aware there were airworthiness problems that had not been corrected before delivery of the aircraft to Fresno and that he had let the aircraft go out anyway knowing that the work was not finished because Joe Duncan told him he was not going to pay for all that work to be done.

Hawkins Decl. at ¶ 7.  This statement establishes that Defendants were aware of airworthiness problems despite their representations to the contrary in the Aircraft Log Book Entry and Work Order.

1    Defendants point to a number of facts in the record that it

2 claims show that Plaintiff has failed to make a prima facie

3 showing of jurisdictional facts.  Defendants argue that

4 Plaintiff's long-term use of the Aircraft and failure to complain

5 about the defects in earlier communications discredit Mr.

6 Hawkins's claim.  Though Plaintiff's use of the Aircraft without

7 complaint could give rise to an inference that it was not

8 defective, that evidence does not impair Plaintiff's prima facie

9 showing of jurisdictional facts.

10    Defendants argue that they signed off on the fuel tank

11 repair in a work order subsequent to the initial Work Order of

12 September 3, 2003.  Defendants claim that a subsequent work order

13 "involved delivery by ASU to a nearby Oklahoma location for

14 replacement of the forward fuel tank, which was leaking."  Defs.'

15 Supp. Br. at 4.  Plaintiff therefore received possession of the

16 Aircraft only after the fuel tank issue had been remedied,

17 Defendants argue.  Plaintiff's claim that Defendants

18 misrepresented the airworthiness of the fuel tank does not fail

19 merely because another work order followed the work order that

20 Plaintiff mentioned in its papers.  Plaintiff's Complaint

21 contends that "various maintenance books, records and other

22 documents" falsely indicated that the Aircraft was airworthy.

23 Compl. at 14.  Thus the claim potentially encompasses any

24 misrepresentations in the Work Order of September 17, 2003,

25 wherein Defendants certified the airworthiness of the Aircraft

26 following the fuel tank repairs.  Defendants concede that the

fuel tank was still malfunctioning after the latter work order according to a letter Mr. O'Berg sent to Joe Duncan on November 10, 2003.  2d Supp. O'Berg Decl. Ex. F at 1.

Defendants claim that one problem Mr. Hawkins mentions does not affect airworthiness.  Defendants claim that engine igniters do not impact airworthiness because they only operate on the ground, not in flight.  Defendants do not contend that the other problems Plaintiff alleges — a leaking fuel tank, improper brake assembly, or autopilot disengagement in flight — do not affect airworthiness.

Defendants also contend that Plaintiff has failed to identify any financial harm it suffered because of the alleged intentional misrepresentation.  See Bldg. Permit Consultants, Inc. v. Mazur, 122 Cal. App. 4th 1400, 1415 (2004) ("actionable deceit also requires damages resulting from reliance on a misrepresentation").  Defendants point out that Plaintiff has paid nothing to Defendants for the repair services.  A party may be liable for intentional misrepresentation regardless of whether it owns the property that it misrepresents or benefits from the misrepresentation.  Swasey v. De L'Etanche, 17 Cal. App. 2d 713, 718 (1936) (citing Ackerman v. Schultz, 178 Cal. 190 (1918)); 5 Witkin Sum. Cal. Law Torts § 772(2) (10th ed. 2005).  Plaintiff claims that it was damaged by paying money for an aircraft that was not airworthy and by being deprived of the use of the Aircraft.  Compl. at 14.  Plaintiff has made a showing sufficient to support a finding that it suffered financial harm.

1    In deciding a motion to dismiss for lack of personal
2  jurisdiction without an evidentiary hearing, the Court will
3  resolve all conflicts in the evidence in favor of Plaintiff.  See
4  AT&T, 94 F.3d at 588; ADO Fin., 931 F. Supp. at 718 (declining to
5  weigh defendants' evidence where plaintiff presented substantial
6  evidence supporting jurisdiction).  Plaintiff's allegations and
7  affidavits establish that the Aircraft did not function in an
8  airworthy manner as Defendants had specified.  Mr. O'Berg
9  admitted to Mr. Hawkins that the Aircraft was not airworthy when
10 he certified it as such.  The requirement that Plaintiff merely
11 make a prima facie showing means that Defendants may not "obtain
12 a dismissal simply by controverting the facts established by a
13 plaintiff through his own affidavits and supporting materials."
14 Data Disc, 557 F.2d at 1285.  Accordingly, the Court will not
15 weigh Plaintiff's evidence against Defendants'.  Moreover, the
16 facts which support jurisdiction based on the intentional
17 misrepresentation claim are intertwined with the merits of the
18 case, making disposition at trial more appropriate.  See ADO
19 Fin., 931 F. Supp. at 714.  The Court holds that Plaintiff has
20 presented a prima facie case that Mr. O'Berg's representations of
21 airworthiness comprise an intentional tortious act.

22                    **(b)   Aimed at the Forum**

23    An intentional act is expressly aimed at the forum when
24 "'the defendant is alleged to have engaged in wrongful conduct
25 targeted at a plaintiff whom the defendant knows to be a resident
26 of the forum state.'"  Dole, 303 F.3d at 1111 (quoting Bancroft &

                                  21

Masters, 223 F.3d at 1087).  Where a defendant's alleged acts
were "'performed for the very purpose of having their
consequences felt in the forum state,'" the express aiming
requirement is met.  Dole, 303 F.3d at 1112 (quoting Brainerd v.
Governors of the Univ. of Alberta, 873 F.2d 1257, 1259-60 (9th
Cir. 1989)).  "The inducement of reliance in California is a
sufficient act within California to satisfy the requirement of
minimum contacts where the cause of action arises out of that
inducement."  Data Disc, 557 F.2d at 1288; see Wien Air Alaska,
Inc. v. Brandt, 195 F.3d 208, 212 (5th Cir. 1999) (purposeful
availment requirement satisfied where foreign attorney made
fraudulent misrepresentations to client in the forum in letters,
faxes, and phone calls).

Plaintiff's allegation that Defendants intentionally
misrepresented the airworthiness of the Aircraft to induce
Plaintiff to complete the purchase evinces conduct targeted at
Plaintiff in the forum.  Defendants allege that those who perform
the repairs and complete the logs generally are unaware of the
destination of aircraft.  O'Berg Supp. Decl. at ¶ 14.  Mr. O'Berg
further declares, "As an aircraft maintenance facility, we would
not have any reason to care where the aircraft is taken after it
leaves our facility because by that time all of our work will
have been completed and we will have been paid."  2d Supp. O'Berg
Decl.  Tellingly, Mr. O'Berg does not contend he was unaware that
the Aircraft's owner resided in California, or that the effects
of a misrepresentation in the log book would be felt there.

1  Since Defendants do not controvert Plaintiff's allegation that

2  they knew that Plaintiff would rely on the misrepresentation in

3  California, the Court takes the allegation as true for the

4  purposes of this motion.  The Court finds that Defendants alleged

5  intentional misrepresentation was aimed at California.

6  **(c)  Harm in the Forum**

7       The Ninth Circuit has not decided the degree of harm that a

8  defendant must cause in the forum to meet the effects test.

9  <u>Dole</u>, 303 F.3d at 1112-13.  A line of Ninth Circuit authority

10 requires that "the brunt of the harm" occur within the forum

11 state.  <u>See</u> <u>id.</u> at 1112; <u>Core-Vent Corp. v. Nobel Indus. AB</u>, 11

12 F.3d 1482, 1486 (9th Cir. 1993).  These cases appear to be in

13 tension with a Supreme Court holding that any significant amount

14 of harm in the forum is sufficient.  <u>See</u> <u>Keeton v. Hustler</u>

15 <u>Magazine</u>, 465 U.S. 770, 772-73, 79 L. Ed. 2d 790, 104 S. Ct. 1473

16 (1984); <u>Dole</u>, 303 F.3d at 1113.  Here, as in <u>Dole</u>, the Court need

17 not decide between these standards because under either standard,

18 the harm Plaintiff suffered in California is sufficient.  <u>See</u>

19 <u>Dole</u>, 303 F.3d at 1113.

20      A plaintiff corporation suffers economic harm at its

21 principal place of business.  <u>Id.</u> at 1114.  Here, Plaintiff is

22 located in California and alleges that Defendants induced it to

23 buy a plane that was not airworthy.  Plaintiff suffered

24 essentially all of the harm in the forum state, at its

25 headquarters.  The Court finds that Plaintiff has alleged

26 sufficient harm in the forum to establish purposeful availment.

23

1                                 **ii.   Conversion**

2                           **(a)   Intentional Act**

3      Plaintiff also claims that Defendants' alleged conversion of

4 the Aircraft amounts to an intentionally tortious act that

5 supports jurisdiction.  Before Plaintiff returned the Aircraft to

6 Oklahoma for the 2005 repairs, Defendants allegedly "expressly

7 agreed" to return the Aircraft after Plaintiff paid for the

8 cosmetic repairs.  Compl. at 19.  Plaintiff claims that

9 Defendants induced it to return the Aircraft to Oklahoma under

10 those agreed upon terms.  Defendants do not present facts that

11 controvert Plaintiff's allegations that they made such an

12 agreement or that they did so to induce Plaintiff to deliver them

13 the Aircraft.

14                         **(b)   Aimed at the Forum**

15      Defendants contend that this claim cannot be a basis for

16 jurisdiction in California because the tort of conversion is

17 aimed at the property and not the owner, citing <u>Farmers Insurance</u>

18 <u>Exchange v. Zerin</u>, 53 Cal. App. 4th 445, 451 (1997).  "The legal

19 injury occasioned by the tort of conversion is deemed to occur

20 where the actual conversion takes place." <u>United States v. Swiss</u>

21 <u>Am. Bank, Ltd.</u>, 191 F.3d 30, 37 (1st Cir. 1999) (citing <u>Cycles,</u>

22 <u>Ltd. v. W.J. Digby, Inc.</u>, 889 F.2d 612, 619 (5th Cir. 1989)).

23      Even where a defendant has reached out to the forum and made

24 a misrepresentation in connection with the conversion,

25 jurisdiction is not proper where the conversion occurred outside

26 of the forum.  <u>Callahan v. Harvest Bd. Int'l, Inc.</u>, 138 F. Supp.

2d 147, 164 (D. Mass. 2001).  In <u>Callahan</u>, the plaintiff
attorney, who held a judgment against a deceased client, sued to
recover on promissory notes defendant had issued to decedent that
defendant now refused to pay.  <u>Id.</u> at 154.  Plaintiff alleged the
tort of conversion based on defendant's refusal to pay on the
notes.  <u>Id.</u> at 164.  Plaintiff argued that personal jurisdiction
was proper based on a letter from defendant that falsely
represented that debtor entity did not exist.  <u>Id.</u>  The court
held that the letter was insufficient to establish jurisdiction
in the forum because conversion is deemed to occur only where the
conversion takes place.  <u>Id.</u> (citing <u>Swiss Am.</u>, 191 F.3d at 37).

Here, the conversion took place, if at all, in Oklahoma
where the Aircraft was located when the Defendants refused to
release it.  Any actions toward California that Defendants took
to induce Plaintiff to transport the Aircraft to Oklahoma do not
provide a basis for personal jurisdiction here.  The Court holds
that Plaintiff's conversion claim does not allege tortious
activity aimed at the forum.  Consequently, this claim does not
provide a basis for jurisdiction over Defendants on a purposeful
direction theory.

> **2.   Relationship Between Lawsuit and Defendants
> California Activities**

The Ninth Circuit employs a "but for" test to determine
whether a claim arises from forum-related activities.  <u>Ballard v.
Savage</u>, 65 F.3d 1495, 1500 (9th Cir. 1995).  The question is
whether, but for Defendants' contacts with California,

Plaintiff's claims would have arisen.  The Court concludes that, but for Defendants alleged misrepresentations to Plaintiff in California, its claim for intentional misrepresentation would not have arisen.

### 3.   Reasonableness

The Ninth Circuit has listed seven factors to balance to determine whether jurisdiction is reasonable:

> the extent of purposeful interjection, the burden on the defendant to defend the suit in the chosen forum, the extent of conflict with the sovereignty of the defendant's state, the forum state's interest in the dispute; the most efficient forum for judicial resolution of the dispute; the importance of the chosen forum to the plaintiff's interest in convenient and effective relief; and the existence of an alternative forum.

Amoco Egypt, 1 F.3d at 851.  Once a court has decided that the defendant has minimum contacts with the forum, the defendant bears the burden to "'present a compelling case' that the exercise of jurisdiction would, in fact, be unreasonable."  Id. at 851-52 (quoting Shute, 897 F.2d at 386 (quoting Burger King, 471 U.S. at 477)).

### a.   Extent of Purposeful Interjection

Plaintiff has made a prima facie case that Defendants reached out to California and committed an intentional tort. Defendants' alleged intentional misrepresentation to Plaintiff of the airworthiness of the Aircraft shows purposeful interjection in the forum.  This factor weighs heavily in favor of jurisdiction in California.

### b.  Burden on Defendants

Each party would be burdened by litigation away from its home court.  This is because some of the witnesses for each party reside close to its headquarters.  Wherever this case is litigated, witnesses and attorneys will have to travel for depositions and for trial.  This factor does not weigh in favor of or or against jurisdiction.

### c.  Sovereignty of Defendants' State

Defendants argue that, under federal law, remedies and rights available to repair facilities are made a local concern.  See 49 U.S.C. § 44108(c).  This provision, however, dictates only the choice-of-law rules for disputes concerning repair, and says nothing about the state's interest in the dispute.  The soverignty factor is unimportant where both parties are United States entities.  See Burger King, 471 U.S. at 477.  In such a case, choice-of-law rules can accommodate the social policies of another state.  Id.  Simply adjudicating Oklahoma contract law in a California federal court does not infringe Oklahoma's sovereignty.  This factor does not weigh against the reasonableness jurisdiction here.

### d.  Forum State's Interest

California has some interest in protecting residents who contract with out-of-state parties for services outside the state.  It also has some interest in the safety of aircraft based here.  Oklahoma has an interest in regulating those who repair aircraft there and in enforcing the agreements they make.  This

27

1    factor does not weigh against jurisdiction in California.

2                    **e.   Most Efficient Resolution**

3         As discussed above, the location of witnesses and evidence

4    gives rise to plausible arguments both for litigation in

5    California and in Oklahoma.  This factor does not indicate

6    jurisdiction in California is unreasonable.

7              **f.   Convenient and Effective Relief for Plaintiff**

8         It would be easier for Plaintiff to litigate in California,

9    nearer to its headquarters.  However, dismissing the case in

10   favor of Oklahoma would not prevent Plaintiff from obtaining

11   relief.  This factor does not weigh for or against jurisdiction

12   in California.

13                   **g.   Existence of Alternative Forum**

14        A suit involving Plaintiff and ASU regarding ASU's attempted

15   sale of the Aircraft is currently pending before a court in

16   Oklahoma.  See Buchanan Decl. Ex. B.  It is not clear from the

17   record whether Plaintiff could raise its intentional

18   misrepresentation claim in that proceeding.  The existence of an

19   alternative forum weighs slightly against California

20   jurisdiction, but is not dispositive.

21                     **h.   Balancing the Factors**

22        None of the factors weighs heavily against jurisdiction in

23   California.  On the other hand, the alleged intentional acts of

24   Defendants amount to purposeful interjection that weighs heavily

25   in favor of jurisdiction.  Defendants have not made a

26   "compelling" showing that California would be an unreasonable

                                  28

1  forum to make personal jurisdiction inappropriate.  <u>See</u> <u>Amoco</u>

2  <u>Egypt</u>, 1 F.3d at 851-52.

3      Accordingly, the Court holds that personal jurisdiction over

4  Defendants is appropriate with respect to the intentional

5  misrepresentation claim.

6      **D.   Pendent Personal Jurisdiction**

7      Where a district court has jurisdiction over certain claims

8  against a party, but not others, it has discretion to exercise

9  pendent personal jurisdiction over the other claims.  <u>CE</u>

10 <u>Distrib., LLC v. New Sensor Corp.</u>, 380 F.3d 1107, 1113 (9th Cir.

11 2004) (district court properly exercised pendent jurisdiction

12 over contract claim based on personal jurisdiction over

13 intentional tort claim).  A court may require a party to defend a

14 claim that lacks an independent basis of personal jurisdiction if

15 it "'arises out of a common nucleus of operative facts with a

16 claim in the same suit over which the court does have personal

17 jurisdiction.'"  <u>Id.</u> (quoting <u>Action Embroidery v. Atl.</u>

18 <u>Embroidery</u>, 368 F.3d 1174, 1180 (9th Cir. 2004)).

19     Of the eight causes of action that Plaintiff pleads, four

20 are against ASU and Mr. O'Berg:  the Third Cause of Action for

21 Intentional Misrepresentation, the Fourth Cause of Action for

22 Negligent Misrepresentation, the Seventh Cause of Action for

23 Breach of Oral Contract for Repairs, and the Eighth Cause of

24 Action for Conversion.  Defendants' alleged intentional acts

25 toward the forum establish personal jurisdiction over it for the

26 intentional misrepresentation claim only.  This claim and the

1  other claims, however, arise out of a common nucleus of fact.

2  All concern communications and other conduct surrounding

3  Defendants' repairs of the Aircraft.  The intentional

4  misrepresentation claim, like the other claims, depends on

5  whether the repairs of the Aircraft were properly completed.

6  Therefore, "[w]hether to exercise pendent personal jurisdiction

7  is committed to the sound discretion of the district court."  CE

8  Distrib., 380 F.3d  at 1113.

9      Considerations of "judicial economy, avoidance of piecemeal

10  litigation, and overall convenience of the parties" are served by

11  retaining jurisdiction over the all of the claims against

12  Defendants.  See Action Embroidery Corp. v. Atl. Embroidery,

13  Inc., 368 F.3d at 1181.  Otherwise Plaintiff and Defendants would

14  be faced with the possibility of a two-front litigation war, with

15  certain claims remaining before this Court and other claims

16  pending elsewhere.  If the Court grants jurisdiction and the

17  intentional misrepresentation claim ultimately fails as a matter

18  of law, the remaining claims may then be dismissed for lack of

19  personal jurisdiction.  See Rosenberg v. Seattle Art Museum, 42

20  F. Supp. 2d 1029, 1038 (W.D. Wash. 1994).

21

22      **ACCORDINGLY**, Defendants' Motion to Dismiss for Lack of

23  Personal Jurisdiction is DENIED.

24  IT IS SO ORDERED.

25  **Dated:  January 4, 2006**            **/s/ Robert E. Coyle**
    810ha4                          UNITED STATES DISTRICT JUDGE
26

30